IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TEISHA GALLEGLY, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CIV-22-817-R |
| | ) |
| CORDELL MEMORIAL HOSPITAL | ) |
| FOUNDATION, d/b/a CORDELL | ) |
| MEMORIAL HOSPITAL; MELINDA | ) |
| LAIRD, an individual; CHERYL | ) |
| PUTNAM, an individual; and JEANIA | ) |
| JACKSON, an individual, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Before the Court is Defendants' Motion to Dismiss (Doc. No. 16), Plaintiff's Response (Doc. No. 20), and Defendants' Reply (Doc. No. 21). Upon consideration of the parties' filings, the Court GRANTS Defendants' Motion to Dismiss.

Plaintiff Teisha Gallegly performed hospital and emergency room ("ER") services at Cordell Memorial Hospital ("CMH") as a contract nurse practitioner ("NP") from June 2020 to May 2022. She alleges that she was wrongfully denied an opportunity for full-time employment in or about December 2021, and that about four months later an incident took place in the CMH ER which led to her removal as an ER provider. Troubled by CMH's response to this incident, she submitted a thirty-day notice of resignation. Her last thirty days were cut a week short, however, when she was allegedly terminated after attempting to send CMH patients a personal letter notifying them of her departure.

Ms. Gallegly originally filed this action in Washita County, Oklahoma, against Defendants CMH, Melinda Laird, Cheryl Putman, and Jeannia Jackson,[1] seeking damages for alleged hiring discrimination, retaliation, wrongful termination, breach of contract, unjust enrichment, and defamation. (*See* Doc. No. 1-1). Defendants removed the case to the Western District of Oklahoma and moved to dismiss certain claims. On November 14, 2022, the Court granted Defendants' partial motion to dismiss Plaintiff's defamation, Title VII, OADA, and *Burk* public policy tort claims. (Doc. No. 10). Plaintiff subsequently filed an Amended Complaint alleging additional claims for tortious interference. (Doc. No. 15). Defendants move to dismiss the: (1) amended defamation claim (Count VII); (2) tortious interference with a contractual or business relationship claim (Count VIII); and (3) tortious interference with a prospective economic business advantage claim (Count IX).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether Plaintiff has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555. (citations omitted).

---

[1] The names of individual Defendants Cheryl Putman and Jeannia Jackson are spelled according to Defendants' spelling. (*See* Doc. No. 1, at 1 n.2; *See* Doc. No. 6, at 2 n.1). Defendant Melinda Laird is the Chief Executive Officer (CEO) of CMH, and Defendant Jeannia Jackson is a registered nurse at CMH. Based on the pleading, the Court is unable to discern Cheryl Putman's occupation, but presumes she is a CMH employee.

"Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. In making its dismissal determination, the Court must accept all the well-pleaded allegations of the complaint as true and construe the allegations in the light most favorable to the claimant. *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). The Court, however, need not accept as true conclusory allegations. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs*, 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

In April 2022, Plaintiff treated two badly burned boys in the CMH ER. (Doc. No. 15, at 8, ¶¶ 42-43). She alleges that she put orders in the computer system for a total of 1.5 mg of morphine to be administered to one of the boys, and that she verbally communicated the order to the assisting nurse, Defendant Jackson; instead, Jackson administered more than twice the ordered dose. (*Id.* at 9-10, ¶¶ 48-50). Rather than admit to administering a potentially lethal dose of morphine to the small child, Plaintiff alleges that Jackson falsified the child's medical record by charting that she was "given a verbal order to administer 1.5 mg of morphine per minute" to shift blame and injure Plaintiff's reputation. (*Id.* at 11, ¶ 56). Ms. Gallegly contends that the medical record remains unchanged and that "the individual Defendants have made statements to other employees and contract providers at CMH that Jackson's falsified medical record is accurate, and that Plaintiff is the one responsible for the medical error." (*Id.* at 12, 22, ¶¶ 60, 112).

3

### I. Defamation Claim

Plaintiff claims that she has been defamed via the: (1) false medical record; and (2) disparaging statements made by the individual Defendants to other CMH employees and contract providers. (Doc. No. 15, at 21-23). Defendants move to dismiss Plaintiff's defamation claim (Count VII) pursuant to the Oklahoma Citizens Participation Act ("OCPA") and, in the alternative, Rule 12(b)(6).

To state a claim for defamation under Oklahoma law, a plaintiff must show:

> (1) [a] false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage [per se], or the existence of special damage [per quod].

*Nelson v. Am. Hometown Publ'g, Inc.*, 333 P.3d 962, 969 (Okla. Civ. App. 2014) (citations omitted). To be defamatory, a statement must be false and expose a "person to public hatred, contempt, ridicule or obloquy, . . . or tend[] to deprive [the person] of public confidence, or . . . injure [the person] in [her] occupation." Okla. Stat. tit. 12, § 1441. Moreover, the false statement "must concern the plaintiff" meaning that "the recipient either correctly, or mistakenly but reasonably, understands that it was intended to refer to the plaintiff." *Gonzalez v. Sessom*, 137 P.3d 1245, 1248 (Okla. Civ. App. 2006) (citing Restatement (Second) of Torts § 564 (1977)).

> [W]ords charged to be defamatory and therefore libelous fall into three classes: (1) those not of defamatory meaning; (2) those reasonably susceptible of both a defamatory and an innocent meaning (commonly referred to as libel *per quod*); and (3) those clearly defamatory on their face (commonly referred to as libel *per se*).

*Sellers v. Oklahoma Pub. Co.*, 687 P.2d 116, 119-20 (Okla. 1984).

4

When a publisher negligently, or intentionally, publishes an unprivileged false and defamatory statement to a third party, the plaintiff must either plead special damages or show that the statement is actionable *per se*, meaning that the language used in the statement "is susceptible of but one meaning, and that an opprobrious one, and the publication on its face shows that the derogatory statements, taken as a whole, refer to the plaintiff, and not to some other person." *Fite v. Oklahoma Pub. Co.*, 293 P. 1073, 1075 (Okla. 1930). The statement's language should be interpreted and "construed by the most natural and obvious meaning, and in the sense that would be understood by those to whom they were addressed."[2] *Fite*, 293 P. at 1075 (citations omitted); A plaintiff "relying on a publication that is not *per se* defamatory must plead and prove special damages."[3] *Sturgeon*

---

[2] *Compare Nelson*, 333 P.3d at 974 (holding that a newspaper's publication of the plaintiffs' home address as the address of a registered sex offender was clearly defamatory on its face because a reader could reasonably conclude that a sex offender lived at that address); *and Fawcett Publications, Inc. v. Morris*, 377 P.2d 42, 48 (Okla. 1962) (holding that a magazine article titled "the pill that can kill sports" was clearly defamatory on its face toward University of Oklahoma football players when it explained that amphetamines could be administered with a nasal spray and that "physicians observed Oklahoma players being sprayed in the nostrils with an atomizer" because the average lay reader would believe the football team illegally used amphetamines); *with Pro. Asset Mgmt., Inc. v. Penn Square Bank, N.A.*, 607 F. Supp. 1290, 1294-95 (W.D. Okla. 1985) (holding that a letter written by an investment company to its clients stating that a large accounting firm's audit report failed to warn depositors of a bank's precarious financial condition was not defamatory on its face toward the accounting firm because the letter did not "convey . . . hatred, contempt, ridicule, or obloquy as judged by their natural and obvious meaning").

[3] Under Oklahoma law, "it shall be sufficient to state generally what the defamatory matter was, and that it was published or spoken of the plaintiff, and to allege any general or special damage caused thereby." Okla. Stat. tit. 12, § 1444.1. Nevertheless, "Oklahoma's adoption of notice pleading has not eliminated the need to allege special damages when libel or slander *per quod* is claimed." *Sturgeon v. Retherford Publications, Inc.*, 987 P.2d 1218, 1224 n.3 (Okla. Civ. App. 1999) (citing *Niemeyer v. U.S. Fidelity and Guar. Co.*, 789 P.2d 1318, 1321 (Okla. 1990) ("With the exception of fraud, mistake, denial of performance,

5

*v. Retherford Publications, Inc.*, 987 P.2d 1218, 1223 (Okla. Civ. App. 1999) (citing *Miskovsky v. Tulsa Tribune Co.*, 678 P.2d 242, 248 (Okla. 1983)).

> It is insufficient to allege generally that the plaintiff was and is greatly and permanently injured and damaged in [her] good name and reputation and was and is exposed to public contempt, hatred, and ridicule and has been caused to resign [her] position . . . and has been damaged in [her] business and reputation . . . without showing by proper averment *how* the special damages were occasioned.

*McKenney v. Carpenter*, 141 P. 779, 780–81 (Okla. 1914) (internal quotation marks and citations omitted) (emphasis added).

### a. The Medical Record

Plaintiff alleges that the child's medical record contains a false and defamatory statement that was published without privilege to Baptist Hospital and other third parties including contract healthcare providers who are not employees of CMH, the child's primary care providers, other providers who may treat the child at CMH or any other facility in the future, and DHS or any other state agency with a need to know. (Doc. No. 15, at 21, ¶¶ 108, 110-11). Defendants Laird, Jackson, and CMH allegedly published the record to injure Plaintiff's reputation and her ability to secure gainful employment. (*Id.* at 21, ¶ 109). Although Plaintiff clarifies in her Response that the specific defamatory statement she is referring to "is the false medical record" (Doc. No. 20, at 5), the entirety of Plaintiff's defamation claim relies on a single statement within the child's medical

---

and special damages, Oklahoma no longer requires strict compliance with terms of art and legal phraseology when pleading a cause of action.")). Consequently, the Oklahoma Supreme Court concludes that there is "no conflict between the requirements enunciated in *Fite* . . . and § 1444[.1]." *Miskovsky v. Tulsa Trib. Co.*, 678 P.2d 242, 248 and n.1 (Okla. 1983).

6

record allegedly entered by Defendant Jackson that says that Jackson was "given a verbal order to administer 1.5 mg of morphine per minute." (Doc. No. 15 at 11, ¶ 56).

While it is possible for a statement to refer to one person but defame another unnamed person, Jackson's alleged statement, when construed by its most natural and obvious meaning, appears innocuous.[4] Plaintiff has not alleged that the medical record contains any other language which, when coupled with Jackson's alleged statement, suggests a defamatory meaning. For example, Plaintiff has not asserted that Defendant Jackson noted in the record that the amount of morphine ordered seemed excessive or dangerous, or that the child suffered an adverse health effect due to the morphine. Moreover, it is unclear whether a third party, to whom the records were published, would understand that Jackson was referring to Gallegly as the one who gave the verbal order. Nevertheless, even if that conclusion could be drawn, any defamatory meaning coming from the statement—that Jackson was "given a verbal order to administer 1.5 mg of morphine per minute"—could only come in the form of innuendo. Thus, Plaintiff must plead special damages.

While Plaintiff states that the individual Defendants falsified the medical record in an *attempt* to injure her reputation and inhibit her ability to secure gainful employment, she has not plausibly alleged that publication of the record itself *actually* damaged her reputation or inhibited her ability to secure gainful employment. (Doc. No. 15, at 21-22,

---

[4] *See* Restatement (Second) of Torts § 564 cmt. e (1977) ("A statement may be published of a third person under such circumstances as to be defamatory of another not named or described.").

¶ 110). Rather, Plaintiff has generally alleged that she has been harmed by Defendants' actions and statements "in an amount to be proven at trial." (*Id.* at 22-23, ¶ 114). The Court finds that Plaintiff has not plausibly plead special damages and how those special damages were occasioned. *See Fite*, 293 P. at 1077 (holding that plaintiff failed to sufficiently plead special damages when he claimed that he had been: (1) exposed to public contempt, hatred, and ridicule; (2) forced to resign his position; and (3) damaged in his business and reputation in the amount of $10,000); *Haynes v. Alverno Heights Hosp.*, 515 P.2d 568, 570 (Okla. 1973) (holding that plaintiff failed to sufficiently allege special damages when he stated that he had "suffered special damage to his personnel rating and his standing with his employer in the sum of 2,000."). Accordingly, the Court dismisses Plaintiff's defamation claim as it pertains to the medical record pursuant to Rule 12(b)(6).[5]

### b. Defendants' Statements to other CMH Employees and Providers

In addition to falsifying the medical record, Plaintiff alleges that Defendants Laird, Jackson, and CMH "made disparaging statements to other employees and contractors of CMH immediately following Plaintiff's retaliatory termination, including by explicitly saying that the medical error was Plaintiff's fault and not Defendant Jackson's." (Doc. No. 15, at 22, ¶ 112). Even accepting these allegations as true, it has been established that "intracompany communications do not constitute actionable publications" because "neither agents nor employees of a company are third persons in relation to the corporation." *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1552 (10th Cir. 1995) (citing

---

[5] The Court need not address Defendants' OCPA argument because Plaintiff has failed to state a plausible claim for defamation pursuant to Rule 12(b)(6).

8

*Magnolia Petroleum Co. v. Davidson*, 148 P.2d 468 (Okla. 1944)). Accordingly, Plaintiff's claim fails for lack of publication to third persons based on the intra-corporate privilege. *See Thornton v. Holdenville Gen. Hosp.*, 36 P.3d 456, 460-61 (Okla. Civ. App. 2001) (holding that statements made between hospital employees and agents regarding a doctor's competency "were protected by the intra-corporate privilege recognized in *Magnolia*.").

## II.    Tortious Interference Claims

As to her tortious interference claims, Plaintiff alleges that individual Defendants have interfered with her present contractual and business relationships and prospective economic business advantages. (Doc. No. 15, at 23-26). Oklahoma recognizes two separate forms of tortious interference: (1) tortious interference with a *present* contractual or business relationship; and (2) tortious interference with a *prospective* economic advantage. *Loven v. Church Mut. Ins. Co.*, 452 P.3d 418, 423-25 (Okla. 2019). While these torts are similar, courts draw a distinction between them as they have different "underlying theories of liability." *Overbeck v. Quaker Life Ins. Co.*, 757 P.2d 846, 847-48 (Okla. Civ. App. 1984). "[I]nterference with a contractual relationship results in loss of a property right," whereas "[i]nterference with a prospective economic advantage usually involves interference with some type of reasonable expectation of profit."[6] *Id.* The element of interference in both torts requires a showing of wrongfulness which implies a showing of bad faith. *Loven*, 452 P.3d at 427.

---

[6] Interference is defined as "intentionally acting with the purpose to interfere with the relationship or expectancy," and "inducing a third person not to enter into the prospective relation or preventing the other party from acquiring the prospective relation." *Loven*, 452 P.3d at 426.

### a. Tortious Interference with a Contractual or Business Relationship

Plaintiff contends that by publishing the child's falsified medical record and disparaging Plaintiff to CMH workers and contractors, Defendants Laird, Jackson, and Putman have tortiously interfered with her present contractual and business relationship with Lafoon Healthcare Services, LLC ("LHS"), owned by Carl Lafoon, and Salubrious Nurse Practitioners, PLLC ("Salubrious"), owned by Jeff Barlow. (Doc. No. 15, at 23-25, ¶¶ 116, 118, 120-23, 125-26). Additionally, Plaintiff alleges that Defendants Laird and Jackson have tortiously interfered with Plaintiff's contract with CMH for direct employment by creating and publishing the fraudulent medical record. (*Id.* at 23-25, ¶¶ 117-19, 124-26). Defendants seek to dismiss Plaintiff's claims under Rule 12(b)(6).

As set forth in the Amended Complaint, CMH contracted with LHS "to provide NP services" at CMH and in its ER. (*Id.* at 2, ¶ 9). LHS subcontracted some of those services to Salubrious, who, in turn, subcontracted services to RedRock Healthcare, LLC ("RedRock") which was owned and managed by Plaintiff Gallegly. (*Id.*). In addition to working at CMH, Plaintiff asserts that she "had a business and contractual relationship with LHS/Lafoon and Salubrious/Barlow to provide NP services to a number of regional hospitals and clinics in the State of Oklahoma" before she was discriminated against and discharged in a retaliatory manner. (*Id.* at 23, ¶ 116). After being terminated by CMH, she alleges that Lafoon and Barlow stopped contracting with her. (*Id.* at 23-24, ¶ 120).

### i. Contractual Relationships with LHS and Salubrious

Plaintiff never alleges that she personally contracted with Salubrious or LHS; instead, she states that RedRock contracted with Salubrious and LHS.[7] (*Id.* at 2-3, ¶¶ 9-10, 12). Because RedRock is not a party to this litigation, Defendants contend that Plaintiff cannot assert these claims in her individual capacity. (Doc. No. 16, at 19). A limited liability company is "a legal entity distinct from its members," with the ability to sue and be sued in its own name. *In re Grooms*, 599 B.R. 155, 159 (Bankr. W.D. Okla. 2019); Okla. Stat. tit. 18, § 2003(1). "The assets and liabilities of the limited liability company are separate from the assets and liabilities of its members." *Grooms*, 599 B.R. at 159.

> Members of an LLC cannot, in their own behalf, maintain a claim for tortious interference with the business relationships or expectancies of the LLC. Only the parties to the relationship or expectancy interfered with may bring a tortious interference claim. That a member of an LLC might experience reduced distributions from the LLC if the entity's relationships are interfered with does not convert the claim to one in behalf of the member personally.

*Steinhausen v. HomeServices of Nebraska, Inc.*, 857 N.W.2d 816, 831 (Neb. 2015) (holding that the sole member of an LLC had not produced evidence creating a genuine factual dispute regarding the existence of a valid business relationship or expectancy because the relationships alleged were relationships and expectancies of the LLC, not the member personally); *see also Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 347–48 (4th Cir. 2013) (relying on the Supreme Court's decision in *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006) in concluding that individual members of an LLC lacked

---

[7] Beginning in or about May 2021, "Plaintiff, through Redrock, contracted directly with CMH (i.e., not through LHS or Salubrious) to provide additional NP services in CMH's rural health clinic." (Doc. No. 15, at 3-4, ¶ 17).

11

standing to bring an action for injuries to the LLC); *Channing Real Est., LLC v. Gates*, 161 A.3d 1227, 1235-36 (Conn. 2017) (concluding that a member or manager of a limited liability company may not sue in an individual capacity to recover for an injury based on a wrong to the LLC). Plaintiff chose to conduct business with LHS, Salubrious, and CMH through a limited liability company rather than in her own name; to allow Plaintiff the protections of limited liability as well as the choice to shed those protections when it serves her interests would undermine the purposes of corporate law. Plaintiff cannot maintain a claim—in her individual capacity—for tortious interference with RedRock's business relationships.[8]

### ii. Contract for Direct Employment with CMH

Plaintiff has also alleged that Defendants Laird and Jackson tortiously interfered with a present contract for direct employment between Plaintiff and CMH by creating and publishing the child's fraudulent medical record. (Doc. No. 15, at 24, ¶ 124). Specifically, Plaintiff alleges that during a meeting in October 2021, Defendant Laird and Dr. Bob Abernathy, the medical director for CMH, agreed to hire Plaintiff directly as a CMH employee for a term of three years—Defendant Laird represented to Plaintiff that CMH would draft the agreement for Plaintiff to review and sign. (*Id.* at 3, 5, ¶¶ 16, 24). After waiting nearly two months on the proposed contract to be drafted, Plaintiff inquired as to

---

[8] In her Response, Plaintiff seeks leave to amend the Amended Complaint to include RedRock as a plaintiff to this lawsuit and to add a negligence claim. (Doc. No. 20, at 10, 13-14, 18). Under Local Civil Rule 15.1, a party moving to amend a pleading "must attach the proposed pleading as an exhibit to the motion. The motion shall state: (1) the deadline date established by the scheduling order, if any, and (2) whether any other party objects to the motion." Plaintiff has not made a separate motion to amend.

the status of the contract in December 2021. (*Id.* at 5, ¶¶ 25-26). Laird responded by informing Plaintiff that CMH would not be hiring her because of a problem with Plaintiff's credentialing. (*Id.* at 5, ¶ 27).

Under Oklahoma law, "[a]n agreement that, by its terms, is not to be performed within a year from the making thereof" is invalid unless it is in writing. Okla. Stat. tit. 15, § 136. Because the alleged agreement was not to be performed within one year and a written contract was never executed, CMH and Plaintiff did not form a valid enforceable contract. In instances "[w]here there is no existing contract, as in the tort of interference with business relations, the plaintiff must show either that prospective economic advantage would have been achieved had it not been for such interference or that there was, in view of all the circumstances, a reasonable assurance thereof." *Crystal Gas Co. v. Oklahoma Nat. Gas Co.*, 529 P.2d 987, 990 (Okla. 1974) (quotation marks and citation omitted).

In light of the circumstances, Plaintiff cannot show that a prospective economic advantage would have been gained through a direct employment contract with CMH had it not been for the Defendants' alleged interference, or that she had a reasonable assurance of being hired as a direct employee at the time of the alleged interference. Defendant Laird informed Plaintiff in or about December 2021 that CMH would not be hiring her as an employee. (Doc. No. 15, at 5, ¶¶ 26-27). The creation and publication of the child's medical record did not occur until approximately four months later in April 2022; Plaintiff was terminated in May. (*Id.* at 8, 15, ¶¶ 42, 69). Thus, Defendants could not have interfered with her expectation to be hired as a CMH employee after she was terminated because Plaintiff had known for months that CMH did not intend to hire her. (*Id.* at 23, ¶ 119).

13

### b. Tortious Interference with Prospective Economic Business Advantage

To prevail on a claim for tortious interference with a prospective economic business advantage under Oklahoma law, a Plaintiff must allege and prove: "(1) the existence of a valid business relation or expectancy; (2) knowledge of the relationship or expectance on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy;[9] and (4) resultant damage to the party whose relationship has been disrupted." *Loven*, 452 P.3d at 425. "To show the existence of a valid business relationship or expectancy, the plaintiff must show either that prospective economic advantage would have been achieved had it not been for such interference or that there was, in view of all the circumstances, a reasonable assurance thereof." *Optima Oil & Gas Co., LLC v. Mewbourne Oil Co.*, No. CIV–09–145–C, 2009 WL 1773198, at *8 (W.D. Okla. June 22, 2009) (quoting *Crystal Gas Co.*, 529 P.2d at 990 (internal quotation marks omitted)).

### i. Other Healthcare Facilities and Clinics

Plaintiff alleges that Defendants Laird, Jackson, and Putman tortiously interfered with prospective business and contractual relationships with other healthcare facilities and clinics, where she contracted to work through LHS and Salubrious, by disparaging Plaintiff and blaming her for Jackson's medical error. (*Id.* at 25-26, ¶¶ 128, 132). She claims that Defendants knew that she had a relationship with "other hospitals and facilities" and that

---

[9] Regarding intentional interference, Oklahoma courts look to whether the interferer maliciously acted with the motive or purpose to intentionally commit "an unreasonable and wrongful act . . . without just cause or excuse" in "bad faith." *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1165 (Okla. 2009); *Overbeck*, 757 P.2d at 848–49.

14

she was "was not working exclusively at CMH." (*Id.* at 25-26, ¶ 131). Plaintiff contends that her prospective business and contractual relationships with these other healthcare facilities have ended because of Defendants' disparaging remarks. (*Id.* at 25, ¶ 130).

Though she states that she was not working exclusively at CMH and that she had prospective business and contractual relationships with other healthcare facilities or clinics, Plaintiff has not specified a single healthcare facility or clinic where she was working or expecting to work. Instead, she provides a "formulaic recitation of the elements" by conclusively stating that Defendants had knowledge of her relationships with other hospitals and facilities, and that they intentionally interfered with those relations injuring Plaintiff in an amount to be determined at trial. (*Id.* at 25-26, ¶¶ 131-32, 134). These vague allegations do not satisfy the Rule 8 pleading standard. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Moreover, Plaintiff states that she contracted through RedRock with LHS and Salubrious to secure work as an NP at other hospitals and ERs. (Doc. No. 15, at 3, ¶ 12). As previously discussed, Plaintiff cannot, in her individual capacity, maintain a claim for tortious interference with the business relationships or expectancies of RedRock.

### ii. Patient Relationships

Plaintiff also claims that Defendant Laird tortiously interfered with a prospective economic relationship and advantage through her patients at CMH. After submitting a 30-day notice of resignation, Plaintiff alleges that she attempted to send her patients a letter notifying them of her departure and recommending that they continue care with another

15

provider at the clinic. (*Id.* at 14, 26, ¶¶ 66, 133). Before she could do so, however, Defendant Laird emailed Plaintiff to inform her that her termination was effective immediately, and that she was not permitted to send the letters as CMH would notify patients of her departure. (*Id.*). Plaintiff asserts that CMH never contacted her patients, leading many of them to believe that she had left them without any attempt to ensure continued care. (*Id.* at 14, ¶ 67). Some of Plaintiff's patients contacted her directly to ask "why [she] would leave without notice or recommendation of continuum of care." (*Id.* at 15, ¶ 68). Plaintiff contends that Laird intentionally prevented Plaintiff from communicating with her patients to "disparage Plaintiff . . . for reporting Defendant Jackson's medical error." (*Id.*). Specifically, she alleges that:

> 129. Plaintiff . . . had a prospective economic relationship and advantage through her patients that she treated while working at CMH, many of whom she got to know personally.
>
> 133. Defendant Laird has tortiously interfered with Plaintiff's relationship with her patients by intentionally refusing to allow Plaintiff to contact her patients regarding continuum of care. This was done to harm Plaintiff's reputation with her patients, through whom Plaintiff had a prospective economic advantage and relation with as their treating provider in the area.
>
> 134. Plaintiff has been injured by Defendant [Laird's] tortious interference with prospective contract / business relations in an amount to be determined at trial.

(Doc. No. 15, at 25-26, ¶¶ 129, 133-34).

"[T]he relationship between a doctor and a patient is at-will; there is no contract at issue." *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1285 (10th Cir. 2012). To recover for tortious interference with a patient relationship, a plaintiff must show a "contractual

relationship or exclusive arrangement with his patients on which to base his prospective loss." *Vesom v. Atchison Hosp. Ass'n*, 279 F. Appx. 624, 640 (10th Cir. 2008); *see also Shattuck Pharmacy Mgmt., P.C. v. Prime Therapeutics*, LLC, No. CIV-21-0221-F, 2021 WL 2667518, at *8 (W.D. Okla. June 29, 2021) (dismissing a pharmacy's claim for tortious interference with the right to transact business with patients (customers) because there was no legitimate business right alleged—customers are free to go wherever they want to fill their prescriptions).

  Although Plaintiff asserts that Defendant Laird tortiously interfered with her relationship with her patients by preventing her from sending notification letters to her patients and refusing to contact them regarding her departure, she plainly sets forth that she intended to send the letters to provide her patients with her "recommendation for continuum of care *with another provider at the Clinic*." (Doc. No. 15, at 14, ¶ 66 (emphasis added)). The Complaint does not contain any allegations showing that had she been allowed to send the letters notifying patients of her departure, Plaintiff had a "reasonable assurance" of obtaining prospective business relations with the patients she treated at CMH. Moreover, Plaintiff has not alleged that she suffered an actual loss of patients, referrals, or monetary damages due to Laird's interference, or that she has been prevented from treating any patient seeking her services. (*Id.* at 26, ¶ 134). Therefore, the Court finds that Plaintiff's allegations, accepted as true, cannot plausibly establish the existence of a valid business relation or expectancy. Accordingly, Plaintiff's claim for tortious interference with a prospective economic business advantage is dismissed for failure to state a claim pursuant to Rule 12(b)(6).

**Conclusion**

As set forth above, the Court GRANTS Defendants' Motion (Doc. No. 16) and dismisses Plaintiff's claims for defamation (Count VII), tortious interference with a contract or business relationship (Count VIII), and tortious interference with a prospective economic business advantage (Count IX) without prejudice.

**IT IS SO ORDERED** this 15th day of May 2023.

*[signature]*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE