IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TEISHA GALLEGLY, an individual, and REDROCK HEALTHCARE, LLC. <br><br> Plaintiffs, <br><br> v. <br><br> CORDELL MEMORIAL HOSPITAL FOUNDATION, d/b/a CORDELL MEMORIAL HOSPITAL; MELINDA LAIRD, an individual; CHERYL PUTNAM, an individual; and JEANNIA JACKSON, an individual, <br><br> Defendants. | No. CIV-22-817-R |

**ORDER**

Before the Court is Defendants' Partial Motion to Dismiss [Doc. 34], Plaintiffs' Response [Doc. 35], and Defendants' Reply [Doc. 38]. Upon consideration of the parties' filings, the Court GRANTS Defendants' Motion in part and DENIES it in part.

**I.   BACKGROUND**

Twice, this Court has granted Defendants' Motions to Dismiss and allowed Plaintiff to amend her Complaint. [Docs. 10, 15, 16, 23]. Now, Defendants take aim at the Plaintiff's latest Amended Complaint [Doc. 31] by asking this Court to dismiss Plaintiff's claims for Tortious Interference with Contractual or Business Relationship [Count VII, *Id.* at 22] and Tortious Interference with Prospective Economic Advantage [Count VIII, *Id.* at 24]. The Court recounts only factual allegations pertinent to this Motion below.[1]

---

[1] Additional facts are discussed in this Court's prior orders. [Docs. 10, 23].

Plaintiff Teisha Gallegly was employed at Cordell Memorial Hospital (CMH) from June 2020 to May 2022 through a series of contractual relationships. CMH contracted with Lafoon Healthcare Services, LLC, (LHS) to provide nurse practitioner services in its hospital and ER. *Id.* at ¶¶ 9-10 With CMH's permission, LHS subcontracted with Salubrious Nurse Practitioners, PLLC, to perform the services. *Id.* at ¶ 10. Salubrious further subcontracted with Plaintiff RedRock Healthcare, LLC, to provide nurse practitioner services. *Id.* Plaintiff Gallegly formed RedRock Healthcare for the sole purpose of employment with CMH and was the sole member of the LLC.[2] *Id.* at ¶¶ 10-11. LHS, Salubrious, and RedRock had a contractual relationship to provide similar services to other rural hospitals in Oklahoma. *Id.* at ¶¶ 12-13. LHS scheduled its contracted providers to work at these facilities, and CMH had the power to approve providers scheduled to work at its facility. *Id.* at ¶ 14.

In April 2022, Gallegly alleges Defendant Jackson, a nurse employed by CMH, committed a serious medical error that placed a child in danger. *Id.* at ¶¶ 43-57. Gallegly alleges Jackson and other CMH personnel blamed her for the medical error; she also alleges documentation of the incident in CMH's patient charting system was changed or falsified to depict Gallegly as the provider at fault. *Id.* at ¶¶ 58-60. Gallegly states she reported Jackson's error to Defendant Laird,[3] and promptly thereafter, Laird communicated to LHS that Gallegly was to be removed from the CMH ER schedule permanently. *Id.* at ¶¶ 64-65.

---

[2] This Order refers to Plaintiffs Gallegly and RedRock Healthcare individually at various points for narrative clarity, but the claims are brought jointly.

[3] The complaint does not make Defendant Laird's role at CMH clear, but the Court presumes her to be in CMH's administration.

Following her removal from CMH schedules, Gallegly alleges Defendants Laird, Jackson, and Putman[4] disparaged her to LHS, Salubrious, and other CMH personnel by blaming her for Jackson's medical error. *Id.* at ¶ 110. Gallegly alleges this disparagement was bolstered by a falsified medical record published in CMH's charting system. *Id.* Since then, LHS and Salubrious have effectively stopped doing business with RedRock while continuing to provide services to CMH. *Id.* at ¶ 111. Likewise, Plaintiffs allege RedRock, via its contractual relationship with LHS and Salubrious, had a prospective business relationship with two other regional hospitals (Okeene Municipal and Carnegie Tri-County Municipal) that was harmed by this disparagement. *Id.* at ¶ 119.

Gallegly and RedRock now jointly allege Defendants' tortious interference with RedRock's present contractual relationship with LHS/Salubrious and prospective economic advantage with the two other hospitals. Defendants move to dismiss the claims under Fed. R. Civ. P. 12(b)(6).

## II.    LEGAL STANDARD

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether Plaintiff has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be

---

[4] Like Defendant Laird, the Court presumes Defendant Putman to be in administration at CMH.

enough to raise a right to relief above the speculative level." *Id.* at 555. (citations omitted). In making its dismissal determination, the Court must accept all the well-pleaded allegations of the complaint as true and construe the allegations in the light most favorable to the claimant. *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

Determining whether a claim is plausible varies based on context and requires the Court to draw on judicial experience and common sense. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [the] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Id.* at 1192. "In other words, Rule 8(a)(2) still lives." *Id.* at 1191.

### III.   DISCUSSION

Oklahoma recognizes two separate forms of tortious interference: (1) tortious interference with a *present* contractual or business relationship; and (2) tortious interference with a *prospective* economic advantage. *Loven v. Church Mut. Ins. Co.*, 452 P.3d 418, 423-25 (Okla. 2019). While these torts are similar, courts draw a distinction between them as they have different "underlying theories of liability." *Overbeck v. Quaker Life Ins. Co.*, 757 P.2d 846, 847-48 (Okla. Civ. App. 1984). "[I]nterference with a contractual relationship results in loss of a property right," whereas "[i]nterference with a prospective economic advantage usually involves interference with some type of

reasonable expectation of profit."[5] *Id.* The element of interference in both torts requires a showing of wrongfulness which implies a showing of bad faith. *Loven*, 452 P.3d at 427.

Plaintiffs' claims can be consolidated into the tort of Interference with a Contractual or Business Relationship. Defendants' arguments for that claim's dismissal require further factual development to be effectively asserted.

### a. Tortious Interference with a Contractual or Business Relationship

Plaintiffs contend that by publishing the child's falsified medical record and disparaging Gallegly to CMH workers and contractors, Defendants Laird, Jackson, Putman and Cordell Memorial Hospital have tortiously interfered with their present contractual and business relationship with Lafoon Healthcare Services and Salubrious. A claim for tortious interference with a business relationship must plausibly demonstrate: "(1) interference with a business or contractual right; (2) malice or wrongful interference that is neither justified, privileged, nor excusable; and (3) damage proximately sustained as a result of the interference." *Loven* at 424. Plaintiffs' Complaint includes sufficient factual allegations, construed in Plaintiffs' favor, to plausibly state a claim.

For the first element, a contractual right is alleged to exist. Plaintiffs state RedRock "had a contractual relationship with LHS/Lafoon and Salubrious/Barlow[.]" Doc. 31: Compl. at ¶ 13. Defendants do not dispute the existence of a contract, but they argue Plaintiffs have not demonstrated the necessary breach of that contract. Defendants point to

---

[5] Interference is defined as "intentionally acting with the purpose to interfere with the relationship or expectancy," and "inducing a third person not to enter into the prospective relation or preventing the other party from acquiring the prospective relation." *Loven*, 452 P.3d at 426.

*Wilspec Tech., Inc. v. DunAn Holding Grp. Co.*, wherein the Supreme Court of Oklahoma described the tort as "focus[ing] on conduct directed at a third party which induces the third party to breach his contract with the plaintiff." 204 P.3d 69, 72 (Okla. 2009) (discussing Restatement (Second) of Torts § 766 (1979)); *accord McGregor v. Kormondy*, 11-CV-0570, 2012 WL 3023202 at *4 (N.D. Okla. July 24, 2012). However, Defendants overlook the rest of the paragraph in *Wilspec*. The Court, in contrasting section 766 and 766A, notes that 766 requires a "breach or nonperformance for liability to attach[,]" and "in either case, the inducer either prevents or hinders the performance of a valid contract[.]" *Wilspec* at 72-73.

This Court finds that Plaintiffs adequately allege the breach or nonperformance of a valid contract at this stage of litigation. Defendants are correct in noting the Complaint does not use the word "breach," however, this Court will not dismiss a plausible complaint over such semantics. Plaintiffs state Salubrious and LHS abruptly ceased to do business with RedRock. Compl. at ¶ 114. The Court finds this allegation sufficient to plead a breach or nonperformance of contract.

As to the second element, Plaintiffs adequately allege Defendants maliciously or wrongfully interfered with RedRock's contract by: (1) making disparaging remarks about Plaintiff Gallegly to LHS and Salubrious, and (2) publishing a fraudulent medical record in CMH's patient charting system. *Id.* at ¶ 112. Defendants argue Plaintiffs' pleadings regarding this element are defective in three ways: (1) a lack of factual allegations of interference against Defendants Putman and CMH; (2) a failure to show Defendants acted

in bad faith; and (3) the communications disparaging Gallegly were protected by privilege. The Court addresses these arguments in turn.

First, the Complaint includes adequate allegations against Defendants Putman and CMH. Plaintiffs state, "Defendants Laird, Jackson, and Putman began disparaging Plaintiff Gallegly to Lafoon, Barlow and others who worked at CMH[.]" *Id.* at ¶ 110. The Complaint quite obviously alleges Defendant Putman disparaged Gallegly to the other parties to the contract. As well, the Complaint alleges fraudulent medical recordkeeping "in CMH's system" was itself malicious interference, *Id.* at ¶ 112, and that the fraudulent record has become CMH's "official medical record for the patients involved[.]" *Id.* at ¶ 59. The allegedly falsified record is said to have been used by Defendants in stating to others that Plaintiff Gallegy was responsible for the medical error. *Id.* at ¶ 61.[6] Such allegations, taken as true, constitute malicious interference undertaken at the organizational level. At this stage of litigation, Plaintiffs' claims against all Defendants are sufficiently supported by factual allegations.

Second, Defendants' argument that Plaintiffs do not adequately allege bad faith on their part is premature. Defendants rely on *Morrow Development Corp. v. American Bank and Trust Co.* for the proposition that malicious interference must be the alleged tortfeasor's primary intent. 875 P.2d 411, 417 (Okla. 1994). In *Morrow*, the Court found that the defendant Bank's conduct was "clearly intended to benefit and support the

---

[6] The Complaint also alleges the falsified record has become a business record of CMH and Baptist Hospital, and all healthcare providers who treated the child patient accessed the record. Compl. at ¶¶ 59, 62

7

legitimate economic interests of the Bank." *Id.* In particular, the Court pointed to the jury's verdict and court's findings that the bank did not commit duress, fraud, or breach covenants of good faith and fair dealing. *Id.* The procedural posture of *Morrow* allowed the court to discern a primary intent. Conversely, this Court cannot dismiss Plaintiffs' claim based on the possibility Defendants' actions were undertaken in the good faith interests of CMH and its patients. Plaintiffs allege otherwise, and this Court must construe their allegations as true at this point in litigation.

Third, more information is needed to properly apply either of Defendants' claimed privileges. Here, Defendants rely on *Thornton v. Holdenville General Hospital* to argue any disparaging comments about Gallegly, made by Defendants to LHS/Salubrious and via the hospital's medical records, are subject to privilege as either intra-corporate communications or statements made in good faith on a subject the speaker holds some duty to act on. 36 P.3d 456, 460-61 (Okla. Civ. App. 2001). The Court need not discuss this subject at length. Successfully asserting the intra-corporate privilege would require a showing by Defendants that LHS and Salubrious were agents acting in their agency capacity when they were told disparaging remarks about Gallegly. *Id.* at 461 ("The existence of agency is generally a question of fact and the burden of proving its existence rests on the party asserting it."). Defendants analogize this case to *Thornton* to argue such agency is evident, but an agency determination at this point in the case is not so clear. More factual development is needed to determine whether LHS and Salubrious were agents in their agency capacity when Defendants disparaged Gallegly to them. Defendants' claim of qualified privilege suffers from the same defect as their argument regarding Defendants'

8

primary intent. More information is needed for Defendants to assert these privileges successfully.

Plaintiffs adequately allege the third element by stating that RedRock was injured by Defendants' tortious interference which caused the cessation of business between RedRock and LHS/Salubrious. Compl. at ¶ 116. Accordingly, Plaintiffs adequately allege a claim of Tortious Interference with a Contractual or Business Relationship. Defendants' motion to dismiss Count VII of the Complaint is DENIED.

### b. Tortious Interference with Prospective Economic Business Advantage

To prevail on a claim for tortious interference with a prospective economic business advantage under Oklahoma law, a plaintiff must allege and prove: "(1) the existence of a valid business relation or expectancy; (2) knowledge of the relationship or expectance on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted." *Loven*, 452 P.3d at 425. "Where there is no existing contract . . . the plaintiff must show either that prospective economic advantage would have been achieved had it not been for such interference or that there was, in view of all the circumstances, a reasonable assurance thereof." *Crystal Gas Co. v. Oklahoma Nat. Gas Co.*, 529 P.2d 987, 990 (internal quotation omitted).

Following an earlier dismissal of this claim, Plaintiffs amended the Complaint to state Plaintiff RedRock had a prospective contractual relationship with hospitals in Okeene and Carnegie, Oklahoma. In doing so, however, Plaintiffs alleged the economic expectancy

with these hospitals was a product of the existing contract between RedRock and LHS/Salubrious. As a result, this claim is defective as pled.

Because Plaintiffs' economic expectancy was to be attained through an existing contract, Plaintiffs' recourse is limited to the previous claim: Tortious Interference with a Contractual or Business Relationship. Plaintiff Redrock alleged it "had a prospective business/contractual relationship [with Okeene and Carnegie] that *it contracted to work with through LHS/Lafoon and Salubrious/Barlow*." Compl. at ¶ 118 (emphasis added). Thus, the only reasonable assurance Plaintiff would perform work for Okeene and Carnegie was rooted in RedRock's contract with LHS and Salubrious.

Additionally, Plaintiffs neither allege Defendants communicated with Okeene or Carnegie Hospitals, nor intentionally interfered with their prospective performance under a contract. Plaintiffs allege only that their prospective relations with the two other hospitals "disappeared" after Defendants began disparaging Gallegly to "Lafoon, Barlow, and others[.]" *Id.* at ¶ 119. The term "others" does not allow this Court to plausibly infer Defendants disparaged Plaintiffs to Okeene or Carnegie personnel. The Court cannot idly speculate that occurred. Taken as a whole, the Complaint alleges Defendants disparaged Plaintiffs to two persons or entities with whom Plaintiff RedRock already had a contract, and, because of that disparagement, Plaintiffs' profits from the contract were lessened.

Plaintiffs allege compensable harm, but RedRock's harm is not a loss of prospective business relations. Rather, RedRock's loss is of prospective work from an *existing* business relationship between it and LHS/Salubrious. As pleaded, Redrock experienced consequential damages from Defendants' interference with its then-current contract with

LHS/Salubrious, not expected damages stemming from RedRock's prospective contract with Okeene or Carnegie. Plaintiffs' claim of prospective loss, as pled, is properly characterized as consequential damages of Defendants' alleged interference with Plaintiffs' existing business relationship.[7] Thus, Defendants' motion to dismiss Count VIII is GRANTED.

### IV.   CONCLUSION

As set forth above, the Court DENIES Defendants' Partial Motion to Dismiss [Doc. 34] with respect to Count VII. The Court GRANTS Defendants' motion to dismiss Count VIII and dismisses the claim without prejudice.[8]

**IT IS SO ORDERED** this 19th day of December 2023.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[7] In an action for interference with contract, "[t]he plaintiff can also recover for consequential harms, provided they were legally caused by the defendant's interference." RESTATEMENT (SECOND) OF TORTS § 774A cmt. d (1979).

[8] The Court does not anticipate a motion for the Complaint to be amended a third time. However, if Plaintiffs choose to do so, this Court reminds parties of its inherent power to shift fees between litigants and otherwise manage its affairs expeditiously, if it finds parties are acting in a wanton fashion to delay or disrupt the litigation. *See Stenson v. Edmonds*, 86 F.4th 870, 875-76 (10th Cir. 2023).